# Third District Court of Appeal

## State of Florida

Opinion filed July 15, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D25-1610, 3D25-1535
Lower Tribunal No. F13-10177B

_____

**State of Florida,**
Petitioner,

vs.

**Julio Montez Morris,**
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Alberto Milian, Judge.

James Uthmeier, Attorney General, and Jennifer A. Davis, Senior Assistant Attorney General, for Petitioner.

Arnaldo Suri and J. Rafael Rodriguez, for Respondent.

Before SCALES, C.J., and GORDO and GOODEN, JJ.

PER CURIAM.

The State of Florida petitions for a writ of certiorari to quash a non-final Order requiring the case against Julio Montez Morris ("Morris") to proceed as a non-death penalty case. For the reasons that follow, we grant the petition for writ of certiorari and quash the order below.

## I.

In November 2013, Morris and a codefendant, Clifton Dickson, were indicted for the first-degree murder of Jazzmon Parker and the attempted murder of Donnel Parker. The State filed a notice of intent to seek the death penalty for both defendants. The notice of intent to seek death was limited to one murder victim: Jazzmon Parker. Based on new allegations arising pending trial, a new indictment was filed against Morris in 2015 and Dickson in 2019 alleging witness tampering, retaliation against a witness, armed burglary and armed robbery. Trial began in January 2019. Mid-trial, key witness Ezell Finklea—who reportedly saw Morris murder Jazzmon Parker— was attacked in his home and murdered, along with another witness, Ira Williams. The trial court subsequently declared a mistrial.

In April 2019, the State filed a superseding indictment against Morris charging him and his codefendants with three counts of first degree murder for the murder of Jazzmon Parker, and the mid-trial retaliation murders of witnesses Finklea and Williams; conspiracy to commit first degree murder;

2

attempted premeditated murder; two counts of retaliating against a witness with bodily injury; two counts of tampering with a witness on a life/capital felony; armed burglary with assault or battery; and attempted premeditated murder with a deadly weapon or aggravated battery. In light of the superseding indictment, the State filed its notice of intent to seek the death penalty against Morris and his co-defendants. While the new indictment was originally sought in 2019 and temporarily given a 2019 case number, the Clerk of Court consolidated the new charges into the original 2013 case number.

Nearly two years later, in March 2021, while conducting routine tracking audits on death cases, the Deputy Chief Assistant for the Legal Division at the State—unaware of the new indictment or charges—prepared and filed a form titled "Announcement of Death Penalty Waiver" as to Morris only, based on the prior waiver of the original charges.[1] The waiver, which bypassed the State Attorney's Office recommendation and review process and was never announced in open court or otherwise communicated to the trial court or attorneys, went completely unnoticed by all parties—including capital death phase counsel who continued preparing the case for trial—for

---

[1] The attorney that filed the waiver was not assigned to the case or listed as an attorney of record.

3

over 3 years. In June 2024, the current Assistant State Attorney assigned to Morris's case discovered the waiver and contacted Morris's defense counsel, Mr. Rodriguez. On June 18, 2025, the State filed a motion for clarification and an affidavit detailing the circumstances surrounding the mistaken filing.

The affidavit from the Deputy Chief Assistant who filed the waiver confirmed it was solely an administrative record-keeping item applicable only to the 2013 indictment for the single murder of Jazzmon Parker. The Deputy Chief Assistant indicated the waiver was mistakenly filed subsequent to the new charges as she was unaware of the superseding indictment charging Morris with the additional retaliation murders of the two witnesses Finklea and Williams, and the State's subsequent notice of intent to seek death. No death penalty waivers were filed for the arguably equally culpable co-defendants and there is nothing in the record referencing any evaluation or recommendation by the Death Penalty Committee.

The waiver purported that defense counsel was served, but counsel stated on the record at the hearing that he did not receive the waiver,[2] and

---

[2] MR. RODRIGUEZ [Defense]: "In fact, we didn't even know about this until 2024. That's why we continued mitigation [be]cause I asked the State look into it with your legal department."; ("While Mr. Suri's address and email were correctly noted in the Announcement, Mr. Rodriguez's address and email were incorrect. Mr. Suri searched his files and emails and did not find any such notification.").

the assigned prosecutor made no oral announcement on the record that the death penalty had been waived for Morris.[3]

At the June 23, 2025 hearing, defense counsel argued that the State's intent was irrelevant as the notice of waiver was now a filed document with the Court, used the present tense, and contained no reference to any particular indictment. Thus, Morris's counsel argued that neither the rules nor statute permitted recission of a notice of waiver after the 45-day period for the State to file a notice of intent to seek the death penalty after an indictment is filed.

The State argued the waiver was not intended to apply to the 2019 indictment, was not processed through the waiver review process and was never announced to the court. The trial court acknowledged that based on the facts of the case, the waiver was probably filed in error but decided that the State was "stuck" with that mistake because it has to do with the death penalty—alluding to "death is different."[4]

---

[3] MR. WARFMAN: ". . . If this were to be waived it would [have] gone through the process, it would have been an announcement in open court, so I'm not putting anything on defense counsel."

[4] "[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two." Woodson v. North Carolina, 428 U.S. 280, 305 (1976); see also Strickland v. Washington, 466 U.S. 668, 704 (1984) (Brennan, J., concurring

After hearing arguments by the parties, the trial court ruled that the waiver would apply to Morris' current indictment and all new charges. As such, the State would be prohibited from presenting the case as a death penalty case.[5] The State subsequently filed this Petition for Writ of Certiorari to challenge the order.

## II.

Our standard of review on a petition for writ of certiorari puts the jurisdictional element first, thus "a party seeking a writ of certiorari must establish '(1) a material injury in the proceedings that cannot be corrected on appeal (sometimes referred to as irreparable harm); and (2) a departure from the essential requirements of the law.'" Schaeffer v. Medic, 394 So. 3d 128, 130–31 (Fla. 3d DCA 2024) (quoting Fla. Power & Light Co. v. Cook, 277 So. 3d 263, 264 (Fla. 3d DCA 2019)); American Prime Title Servs., LLC v. Wang, 317 So. 3d 1183, 1185 (Fla. 3d DCA 2021) (quoting A.H. v. Dep't. of Children & Fams., 277 So. 3d 704, 706-707 (Fla. 3d DCA 2019)); State v. Lyons, 392 So. 3d 281, 284 (Fla. 2d DCA 2024). "Courts consider in tandem

in part and dissenting in part) ("[W]e have consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding[.]").

[5] The trial court also indicated at the hearing that it would apply the waiver to co-defendant Dickson despite the waiver only naming Morris.

6

whether the contested order would cause the petitioner material injury and whether the petitioner has an adequate remedy on appeal, referring to the combined question as whether the petitioner would suffer 'irreparable harm.'" State v. Garcia, 350 So. 3d 322, 325 (Fla. 2022). "The requirement of irreparable harm is jurisdictional." Thomas-McDonald L. Firm, P.A. v. Silva, 400 So. 3d 753, 754 (Fla. 3d DCA 2024). "Unless the petitioner establishes irreparable harm, the court must dismiss the petition for lack of jurisdiction." Damsky v. Univ. of Miami, 152 So. 3d 789, 792 (Fla. 3d DCA 2014); Stockinger v. Zeilberger, 152 So. 3d 71, 73 (Fla. 3d DCA 2014) ("The establishment of irreparable harm is a condition precedent to invoking certiorari jurisdiction." (citing Miami–Dade Cnty. v. Dade Cnty. Police Benevolent Ass'n, 103 So. 3d 236, 238 (Fla. 3d DCA 2012))).

**III.**

We first examine whether the State has demonstrated irreparable harm to overcome the first jurisdictional hurdle. Because the trial court's ruling will prevent the State from prosecuting its case against Morris as a death penalty case as set forth in the superseding April 22, 2019 indictment, we find the State has met the first jurisdictional hurdle. "Irreparable harm in the criminal context, when the petition is brought by the State, is a unique issue due to

7

the State's limited ability to appeal."[6] State v. Kilburn, 418 So. 3d 275, 278 (Fla. 2d DCA 2025) (quoting State v. Milbry, 219 So. 3d 160, 161 (Fla. 5th DCA 2017)); State v. Pettis, 520 So. 2d 250, 253 (Fla. 1988) ("If a nonfinal order does not involve one of the subjects enumerated in Florida Rule of Appellate Procedure 9.140(c)(1), the [S]tate would not be able to correct an erroneous and highly prejudicial ruling. Under such circumstances, the [S]tate could only proceed to trial with its ability to present the case significantly impaired."). And "the Florida Supreme Court has held that where an order forces the State to proceed to trial with a significant impairment, and no appeal from the order would be available on an acquittal, the State may properly invoke certiorari review." Milbry, 219 So. 3d at 161.

The order causes irreparable harm by permanently barring the State from seeking the death penalty against Morris pursuant to the superseding indictment and concomitant notice of intent to seek death, while allowing the State to pursue the death penalty against codefendants, who are alleged to

---

[6] See Lyons, 392 So. 3d at 285 ("It is well-settled that certiorari jurisdiction exists to review nonfinal orders that impair the State's ability to prosecute its case."); see also section 924.07(1)(h), Florida Statutes (authorizing the State to appeal all other pretrial orders); Appealable orders, 2 Fla. Prac., Appellate Practice § 27:24 n.4 (2025 ed.) ("Because there is no comparable court rule for nonfinal orders, an appeal to the district court of appeal under this section must be treated as a petition for certiorari." (citations omitted)).

be equally culpable in the murders of witnesses Finklea and Williams. "Under Florida law, when a co[-]defendant is equally culpable or more culpable than the defendant, disparate treatment of the co[-]defendants may render the defendant's punishment disproportionate." Farina v. State, 801 So. 2d 44, 55 (Fla. 2001). Here, the order forces the State to proceed to trial with significant prosecutorial impairment as to Morris, and no appeal from the order would be available post-trial. See Pettis, 520 So. 2d at 253. This satisfies the irreparable harm element of certiorari.

## IV.

Next, we must determine whether the trial court departed from the essential requirements of the law. A departure of the essential requirements of law is "a violation of a clearly established principle of law resulting in a miscarriage of justice." Combs v. State, 436 So. 2d 93, 96 (Fla. 1983). It is more than mere legal error. Id. at 95. Cf. Jones v. State, 477 So. 2d 566, 569 (Fla. 1985) (Boyd, C.J., concurring specially) ("It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice. The writ of certiorari properly issues to correct essential illegality but not legal error.").

> "[C]learly established law" can derive from a variety of legal sources, including recent controlling case law, rules of court,

9

statutes, and constitutional law. Thus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.

Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 890 (Fla. 2003). See also City of Miami v. Blanco, 336 So. 3d 1268, 1271 (Fla. 3d DCA 2022) ("A departure from the essential requirements of law can be demonstrated based on statutes, rules of procedure, or case law."); Dep't of Corr. v. Harrison, 896 So. 2d 868, 870 (Fla. 5th DCA 2005) ('We agree with [Dep't of Corr. v. Grubbs, 884 So. 2d 1147 (Fla. 2d DCA 2004)] that the order under review violates the separation of powers doctrine and thus departed from the essential requirement of law[.]" (footnote omitted)); Dep't of Child. & Fams. v. K.R., 946 So. 2d 106, 107 (Fla. 5th DCA 2007) ("Because we conclude that the order in question violates the separation of powers doctrine, and thus departed from the essential requirements of law, we grant certiorari relief.").

**A.**

"The cornerstone of American democracy known as separation of powers recognizes three separate branches of government—the executive, the legislative, and the judicial—each with its own powers and responsibilities." Bush v. Schiavo, 885 So. 2d 321, 329 (Fla. 2004). The Florida Constitution mandates: "The powers of the state government shall be divided into legislative, executive and judicial branches. No person

10

belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." Art. II, § 3, Fla. Const. This provision "encompasses two fundamental prohibitions. The first is that no branch may encroach upon the powers of another. The second is that no branch may delegate to another branch its constitutionally assigned power." Chiles v. Child. A, B, C, D, E, & F, 589 So. 2d 260, 264 (Fla. 1991) (internal citations omitted). This case concerns the former.

"Under Florida's constitution, the decision to charge and prosecute is an executive responsibility, and the state attorney has complete discretion in deciding whether and how to prosecute." State v. Bloom, 497 So. 2d 2, 3 (Fla. 1986). See also Cleveland v. State, 417 So. 2d 653, 654 (Fla. 1982). "[P]rosecutorial discretion is itself an incident of the constitutional separation of powers, and that as a result the courts are not to interfere with the free exercise of the discretionary powers of the prosecutor in his control over criminal prosecutions." State v. Cain, 381 So. 2d 1361, 1367 n.8 (Fla. 1980). Accord Art. II, § 3, Fla. Const.;[7] State v. Jogan, 388 So. 2d 322 (Fla. 3d DCA

---

[7] Article II, Section 3 of the Florida Constitution provides that "[t]he powers of the state government shall be divided into legislative, executive and judicial branches" and that "[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."

1980) (holding pretrial decisions to charge and prosecute rest within the sole discretion of the state attorney).

This prosecutorial discretion includes whether to seek the death penalty. See Bloom, 497 So. 2d at 3 ("We conclude that the circuit judge has no authority to interfere with the prosecutor's discretion in proceeding with this cause as a death penalty case. If we allowed the circuit judge to make pre-trial determinations of the death penalty's applicability, we would be modifying the death penalty's statutory scheme."). Indeed, "article II, section 3, of the Florida Constitution prohibits the judiciary from interfering with the prosecutor's decision to seek the death penalty in a first-degree murder case." State v. Donner, 500 So. 2d 532, 533 (Fla. 1987). See also Valdes v. State, 728 So. 2d 736, 738–39 (Fla. 1999) ("This Court has long held that as the prosecuting officer, the state attorney has complete discretion in the decision to charge and prosecute, and the judiciary cannot interfere with this discretionary executive function." (citation modified)). "The decision to charge first-degree murder and prosecute the case as a capital offense through adjudication remains within the discretion of the state attorney." State v. Jones, 209 So. 3d 6, 10 (Fla. 2d DCA 2016). "The trial courts simply have no authority to determine the applicability of the death penalty to defendants who have not been convicted of capital felonies." Id.

at 11.  Cf. Jogan, 388 So. 2d at 323 (recognizing that the pretrial prosecutorial discretion lies solely with the state attorney).

**B.**

Florida law sets forth how the State pursues the death penalty.  "If the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment."  § 782.04(1)(b), Fla. Stat. (2016).  See also Fla. R. Crim. P. 3.181.  Once the prosecutor provides that notice, other procedural rules come into play. See Fla. R. Crim. P. 3.112;[8]  Fla. R. Crim. P. 3.202; Fla. R. Crim. P. 3.203; Fla. R. Crim. P. 3.780.  But there is no stautory equivalent as to how the death penalty is waived once sought.

With these principles in mind, we turn to the case at hand.  In 2021, the State administratively filed a notice of waiver in the court file directed to the 2013 charges.  The trial court, the parties, and the attorneys litigating the case were not aware of its existence.  They continued to litigate this as a capital case for several years.[9]

---

[8] Florida Rule of Criminal Procedure 3.112 provides that any waiver directed to a death penalty charge is effective only if the State affirmatively makes the waiver "on the record." Fla. R. Crim. P. 3.112(b).

[9] MR WARFMAN [State]: No one at that point was believing that the State had waived. In fact, at that point the defense was continuing with their mitigation method as reflected in the docket, and the Court was under the

13

Upon being alerted to the notice, the trial court unilaterally chose to apply the waiver as a waiver of death on all of Morris's charges, informing the State that it was "stuck" with its mistake because it related to the death penalty. In doing so, the court effectively not only created the very type of "Catch-22" or "gotcha" result this Court has long refused to endorse but also supplanted the executive branch's exclusive charging discretion by extending a waiver beyond the charges to which it was directed. See Salcedo v. Asociacion Cubana, Inc., 368 So. 2d 1337, 1339 (Fla. 3d DCA 1979) ("[T]he courts will not allow the practice of the 'Catch–22' or 'gotcha!' school of litigation to succeed."); Nelson v. State, 855 So. 2d 132, 133 n.1 (Fla. 4th DCA 2003) (same); Andreaus v. Impact Pest Mgmt., Inc., 157 So. 3d 442, 445 (Fla. 2d DCA 2015) ("The trial court should not have rewarded this 'gotcha' tactic, and we will not do so here."); Harley v. Lopez, 784 So. 2d 447, 448 (Fla. 3d DCA 1999) (refusing to reward "gotcha" tactics, which have been "long abhorred by this court"); M–5 Commc'ns, Inc. v. ITA Telecomms., Inc., 708 So. 2d 1039, 1039 (Fla. 3d DCA 1998) ("[R]eversal

---

impression it was still a death case, so everyone was acting under the assumption it was a death case.

MR RODRIGUEZ [Defense]: In fact, we didn't even know about this until 2024. That's why we continued mitigation [be]cause I asked the State look into it with your legal department.

14

is. . . mandated by an application of the anti-gotcha rule in its original and purest form.").

We have found no constitutional, statutory, or decisional authority that allows a trial court to strike or overrule a prosecutor's notice of intent to seek the death penalty. To the contrary, the Florida Constitution provides that the decision to charge and prosecute is an exclusively executive function, and the state attorney has complete discretion in deciding whether and how to prosecute. Art. V, § 17, Fla. Const. ("[T]he state attorney shall be the prosecuting officer of all trial courts . . . ."); Bloom, 497 So. 2d at 3 (holding the decision to charge and prosecute is an exclusively executive function, and the trial judge did not have the authority to make a pre-trial determination as to the applicability of the death penalty); Cain, 381 So. 2d at 1367 (holding the discretion of a prosecutor in deciding whether and how to prosecute is absolute in our system of criminal justice); State v. Mancuso, 355 So. 3d 942, 944-45 (Fla. 4th DCA 2023). As the Florida Supreme Court opined in Cain:

> Indeed, there is considerable authority for the proposition that prosecutorial discretion is itself an incident of the constitutional separation of powers, and that as a result the courts are not to interfere with the free exercise of the discretionary powers of the prosecutor in his control over criminal prosecutions.

Cain, 381 So. 2d at 1367 n.8.

15

As relevant here, the trial court does not have the constitutional or statutory authority to infringe on the prosecutorial function of the State regarding the administrative waiver of death notice. Bloom, 497 So. 2d at 3 (holding the trial court has no authority to interfere with the prosecutor's discretion in proceeding with a case as a death penalty case. "If we allowed the circuit judge to make pre-trial determinations of the death penalty's applicability, we would be modifying the death penalty's statutory scheme."). And it is the state attorney, not the trial courts, who "has complete discretion in making the decision to charge and prosecute." Cleveland, 417 So. 2d at 654; see also State v. Bauman, 425 So. 2d 32, 34 (Fla. 4th DCA 1982) ("'[T]he discretion of a prosecutor in deciding whether and how to prosecute is absolute in our system of criminal justice.'" (footnote omitted) (quoting Cain, 381 So. 2d at 1367)); State v. D.D.B., 737 So. 2d 1178, 1179 (Fla. 2d DCA 1999) (concluding that trial judge did not have discretion to dismiss criminal mischief charge against juvenile on court's own motion, and doing so encroached upon prosecutor's authority). "The prosecutor is the only one who has the authority to make decisions relating to the allocation of prosecutorial resources." State v. D.W., 821 So. 2d 1179, 1180 (Fla. 3d DCA 2002) (holding trial judges do not have the authority to participate with the

16

State in making "screening" decisions as to which cases should or should not be prosecuted).

We find the trial court departed from the essential requirements of law by treating a mistaken administrative filing as a binding exercise of prosecutorial discretion. The undisputed evidence established that the attorney who filed the waiver—who was not assigned to the case or listed as an attorney of record—was unaware of the 2019 superseding indictment, intended the filing only to reference the 2013 indictment, the filing bypassed the State Attorney's Office recommendation and review process and was never announced in open court.[10] To be clear, no prosecutor exercising informed discretion ever decided to waive the death penalty as to the 2019 indictment in this case.

Yet the trial court applied the waiver to those charges anyway. In doing so, it did not enforce a prosecutorial decision but independently made one.

---

[10] The process for evaluating a death penalty waiver begins with a death penalty evaluation prepared by the assigned ASA and presentation to the State Attorney's Office Death Penalty Committee – composed of the SAO Chief Assistant and Deputy Chief Assistant, the Chief of the Legal Division and another member of the Legal Unit. Once the Committee makes the decision to waive, that decision is relayed to defense counsel, and in such case, the assigned prosecutor is responsible for making an oral announcement on the record advising the Court and defense counsel (and the defendant) that the death penalty is waived. That process did not occur.

The decision whether to seek the death penalty is committed exclusively to the executive branch, therefore, the trial court's unilateral extension of the waiver to the 2019 indictment impermissibly interfered with the state attorneys constitutionally protected prosecutorial discretion.

The trial court's order did more than misconstrue a filing—it transformed a document directed at one indictment into a binding waiver of another. That intrusion into an exclusively executive function constitutes a departure from the essential requirements of law by usurping a charging decision reserved exclusively to the state attorney. This was a departure from the essential requirements of the law—the express mandate of the Florida Constitution's separation of powers. See Harrison, 896 So. 2d at 870 ("We agree with Grubbs that the order under review violates the separation of powers doctrine and thus departed from the essential requirements of law and that the Department may obtain review of such orders through a certiorari proceeding." (footnote omitted)); State v. Cotton, 769 So. 2d 345, 353 (Fla. 2000) (observing that our courts have "traditionally applied a strict separation of powers doctrine"); State v. W.D., 112 So. 3d 702, 704-05 (Fla. 4th DCA 2013) (holding the separation of powers doctrine provides that one branch of government may not encroach upon the powers of another).

18

And so, certiorari lies. Accordingly, we grant the petition for writ of certiorari and quash the order under review. As this case is grounded on unusual and specific facts, we emphasize that our holding should be narrowly construed. This case shall proceed as a capital case until and unless the State announces a formal waiver of the death penalty on the record as to the current charges.

Petition granted; order quashed. [11]

---

[11] While we find this matter meets the requirements for certiorari, we note that prohibition is the traditional remedy when the trial court attempts to block a prosecutor's right to pursue the death penalty. See Bloom, 497 So. 2d at 3 ("A writ of prohibition is the appropriate remedy when a trial court attempts to interfere with the prosecutorial discretion of a state attorney."); see also State v. Demons, 351 So. 3d 10, 16 (Fla. 4th DCA 2022); State v. Chapman, 227 So. 3d 626, 627 (Fla. 4th DCA 2017); State v. Lopez, 219 So. 3d 865, 865 (Fla. 4th DCA 2017); State v. Jones, 209 So. 3d 6, 8-9 (Fla. 2d DCA 2016). While prohibition cannot be used to revoke an order already entered, Bloom remains instructive because it recognizes prohibition as a proper remedy to thwart a trial court's improper interference with a prosecutor's right to pursue the death penalty.